**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dialog4 System Engineering GmbH, ) | Case No. CV 07-2534-PHX-MHM |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| Circuit Research Labs, Inc.; Charles ) Brentlinger and Tammy Brentlinger, ) | |
| Defendants. ) | |

Currently pending before the Court is Plaintiff Dialog4 System Engineering GmbH's ("Dialgo4")May 30, 2008 Motion for Partial Summary Judgment. (Dkt. #17). Defendants Circuit Research Labs, Inc. ("CRL"), Charles Brentlinger ("Brentlinger"), and Tammy Brentlinger filed a Response on July 2, 2008. (Dkt. #19). Plaintiff filed a Reply. (Dkt. #21). After reviewing the pleadings, the Court issues the following order.

**I.    BACKGROUND**

In either late 2001 or January 2002, Dialog4, a German limited liability corporation, Berthold Burkhardtsmaier ("Burkhardtsmaier"), Dialog4's Managing Director, and Defendant CRL entered into an Asset Sale and Purchase Agreement ("ASPA"), whereby Dialog4 agreed to sell all or most of its business assets to CRL. (Plaintiff's Statement of Facts ("SOF") ¶ 3, Ex. 1; Defendants' Controverting Statement of Facts ("CSOF") ¶ 3). As consideration, CRL agreed to pay Dialog4 a purchase price of $2,000,000: $750,000 in cash installments and 1,250,000 shares of CRL's stock ("CRL

1    stock"), then valued at $1.00 per share. (SOF ¶ 3, Ex. 1). At that same time, Dialog4,
2    Burkhardtsmaier, and Defendant Brentlinger, CRL's Chief Executive Officer and
3    Chairman of the Board (CSOF ¶ 3) , entered into a Stock Purchase Agreement ("SPA"),
4    whereby Brentlinger agreed to purchase CRL stock from Dialog4, upon written request
5    from Dialog4 "at any time beginning twelve months after the purchase date and ending
6    eighteen months after the purchase date." (SOF ¶ 4, Ex. 2). Burkhardtsmaier, became an
7    employee of CRL at the time the ASPA and SPA were signed. (CSOF ¶ 4; Brentlinger
8    Decl. ¶ 7 (CSOF, Ex. A)).

9    On January 18, 2002, the parties to the ASPA and SPA, including Dialog4, CRL,
10   and Brentlinger, entered into an Amendment to the Existing Agreements and Closing
11   Declaration ("First Amendment"). (SOF, Ex. 1, pp. 34-36). The First Amendment
12   reiterated that the purchase price for Dialog4's assets was $750,000 plus 1,250,000 shares
13   of CRL, payable in accordance with Article 4.2b of the ASPA. (Id., p.34). The First
14   Amendment also reiterated that the stock purchase price of the CRL stock purchased by
15   Brentlinger pursuant to Paragraph 6 of the SPA was $1.00 per share plus 10 percent. (Id.,
16   p.2).

17   On March 26, 2002, the parties entered into a Second Amendment to Existing
18   Agreements and Closing Declaration ("Second Amendment"), which, among other
19   things, required CRL to "immediately begin to register the Purchase Price Stock under the
20   Securities Laws of the United States so that the Purchase Price Stock will be registered
21   and legally saleable on US securities markets at such time as Dialog4 may be entitled to
22   sell such shares pursuant to the Agreements and the Amendment." (SOF, Ex.1, p.40). It
23   also required CRL to "use its best efforts to cause such registration to become effective
24   prior to any default by . . . CRL or [Brentlinger] which would permit the sale of the
25   Purchase Price Stock by Dialog4." (Id.). Further, the Second Amendment stated that
26   "[a]ll disputed arising in connection with this Second Agreement shall be finally settled"
27   through arbitration. (Id., p.41).
28

- 2 -

Sometime in Fall 2002, after closing on the ASPA and SPA, a dispute arose between the parties concerning alleged "misrepresentations during negotiations of the ASPA and SPA," and CRL ceased making installment payments to Dialog4 pursuant to the ASPA. (SOF ¶ 6; CSOF ¶ 9; Brentlinger Decl. ¶ 8). CRL also failed to register the CRL Stock pursuant to the Second Amendment. (SOF ¶ 6). Thereafter, on March 21, 2003, Dialog4 sent a timely, written request to Brentlinger that he purchase the CRL stock from Dialog4 pursuant to Paragraph 3 of the SPA. (SOF ¶ 5; CSOF ¶ 4). However, Brentlinger did not formally respond to Dialog4's request. (SOF ¶ 5; Brentlinger Decl. ¶ 9).

In April 2003, Dialog4 invoked the arbitration pursuant to the ASPA. (SOF ¶ 6). An evidentiary hearing was conducted in Germany on April 28, 2004, and on October 4, 2004, Dr. Klaus Sachs, the sole arbitrator, issued an Arbitration Award ("Award") (subsequently modified in a December 2, 2004 Addendum). (Id. ¶ 7, Ex. 4). In addition to various monetary awards, the Award ordered CRL to register the CRL stock with the SEC under the Securities Act of 1933. (Id. ¶ 8). However, Defendants did not fully comply with the Arbitration Award. (Brentlinger Decl. ¶ 12). As a result, Dialog4 subsequently initiated litigation in the District of Arizona, <u>Dialog4 System Engineering GmbH v. CRL Systems, Inc., et al.</u>, No. CIV 05-0583-PHX-EHC, to confirm and enforce the Award. (Id. ¶ 10).

On April 15, 2005, Dialog4, CRL, and Brentlinger entered into a Settlement Agreement and Release ("SAR") to "resolve any and all disputes between [the parties], including but not limited to the claim asserted in the Arizona Litigation and in the Employment Litigation and the additional claims which could be asserted under the ASPA and the Stock Purchase Agreement." (SOF ¶ 11, Ex. 6). Paragraph 3 of the SAR requires CRL and Brentlinger to pay Dialog4 $965,000 in two installments. (SOF ¶ 12, Ex. 6 ¶ 3). In addition, Paragraph 4 of the SAR requires CRL to (1) "file with the [SEC] a registration statement," (2) "use its best efforts to have such registration statement declared effective as expeditiously as practicable," and (3) "keep such registration

1  statement effective" for five years unless one of two specified events occurred.  (Id. ¶ 4).
2  Paragraph 1 of the SAR releases Defendants of liability "[u]pon full payment by
3  Respondents in accordance with Paragraph 3 of this Agreement and the registration of the
4  Shares pursuant to Paragraph 4 of this Agreement," and Paragraphs 8(d) and (e) provide
5  that Dialog4 can seek enforcement of the ASPA or SPA if CRL and Brentlinger "are in
6  default of any of their obligations under Paragraph 3 or Paragraph 4 of [the SAR]."  (Id.
7  ¶¶ 1, 8(d), 8(e)).

CRL made both installment payments, totaling $965,000, to Dialog4 pursuant to Paragraph 3 of the SAR.  (SOF ¶ 12).  CRL also registered the CRL stock with the SEC pursuant to Paragraph 4 of the SAR.  (Id. ¶ 14).  The registration became effective in late 2005.  (Dkt. #21, Ex. B).  In order to maintain registration, CRL had to subsequently prepare and file quarterly, amended or supplemental prospectus materials with the SEC; they did so through November 14, 2006.  (Id.; Brentlinger Decl. ¶ 14).  CRL ceased filing its post-effective registration documentation and thus the CRL stock registration lapsed in early 2007.  (SOF ¶ 14; Brentlinger Decl. ¶ 16).  Neither of the two specified events in Paragraph 4 of the SAR occurred prior to the 2007 lapse of registration of the CRL stock.  (SOF ¶ 13).

Dialog4 did not sell any of its CRL stock in 2006 or 2007 (except for approximately 10,000 shares in October 2007).  (CSOF ¶ 17; Dkt. #21, p.9 n. 3).  In a May 21, 2007 email to Burkhardtsmaier, Robert McMartin ("McMartin"), CRL's Chief Financial Officer and Executive Vice President, asked Burkhardtsmaier to "take the posting of [his] shares off [his] website" because Burkhardtsmaier was "using stale dated information and there is [a] black out period on [his] shares right now [and] it will not be lifted until we get the post effective amendment finished."[1]  (CSOF, Ex. E).  Then, in a

---

[1] A "blackout period" is "[a] period when a public company's directors, officers, and specified employees can't trade the company's stock.  Blackout period occur prior to the release of annual or quarterly financial earnings information, and may extend for a time period after the release of the earnings information.  The company, not the [SEC] sets the

- 4 -

1    July 3, 2007 email to McMartin, Burkhardtsmaier wrote that "[t]he intention is to sell off
2    the majority of the shares until the end of 2007." (CSOF, Ex. D). McMartin wrote back
3    and again informed Burkhardtsmaier that he was "in a black out period and therefore
4    prohibited from selling [his] shares." (Id.). Burkhardtsmaier responded: "No problem.
5    The current share price is not attractive for any sales activities. What is the reason for the
6    'black out period'? What has to be done to terminate this status." (Id.).

7    On October 10, 2007, Burkhardtsmaier wrote to Joseph Richardson
8    ("Richardson") of Squire, Sanders & Dempsey, LLP, inquiring into "why we cannot sell
9    the shares we want"; he also wrote that "[t]o [his] knowledge, CRL filled [sic] a statement
10   (and is also paying for it) to allowing [sic] Dialog 4 to freely trade the CRL shares."
11   (SOF, Ex. 7). Richardson responded the next day, explaining that "the [CRL] shares are
12   not freely sellable" and "the registration statement is currently not in effect" because
13   "[p]reparing a new up-to-date registration statement [to keep it effective would] cost CRL
14   between $15,000 and $60,000" and "take approximately 6 to 8 weeks." (Id.).

15   Then, on November 14, 2007, Brett Dunkelman of Osborn Maledon, P.A., sent a
16   letter on behalf of Dialog4, stating that Dialog4 considered Defendants' failure to
17   maintain registration of the CRL stock a breach of Paragraph 4 of the SAR. (Dkt. #21,
18   Ex. B). The letter acknowledged that CRL registered the stock in 2005 and filed
19   amended or supplemental prospectus materials through November 14, 2006; but
20   "[w]ithout informing Dialog4, CRL decided to cease filing such materials thereafter."
21   (Id.). As such, the letter stated that "[u]nless CRL immediately resumes performing its
22   obligations under Paragraph 4 and causes the registration to once again become effective
23   within 30 days, Dialog4, at its discretion, will exercise any and all rights it may have
24   under the [SAR], [ASPA], and [SPA]." (Id.). Dialog4 filed this lawsuit on December 14,
25   2007 (Dkt. #1).

---

blackout period." Webster's New World Finance and Investment Dictionary (Wiley Publ'g, Inc., Indianapolis, IN, 2003).

- 5 -

1    Dialog4 filed its Motion for Partial Summary Judgment on May 30, 2008. (Dkt.
2 #17). CRL filed post-effective amendments to re-register the CRL stock that same day.
3 (CSOF ¶ 22). The CRL stock is currently registered and freely tradeable at
4 approximately $0.25 per share. (Id. ¶ 23).

## II.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

6    Summary judgment is appropriate when the "pleadings, depositions, answers to
7 interrogatories, and admissions on file, together with the affidavits, if any, show that there
8 is no genuine issue as to any material fact and that the moving party is entitled to a
9 judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial
10 burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v.
11 Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir.
12 2001). Specifically, the moving party must present the basis for its motion and identify
13 those portions of the record that demonstrate the absence of a genuine issue of material
14 fact. See, e.g., Nissan Fire & Marine Ins. Co. v. Fritz Co., 210 F.3d 1099, 1105 (9th Cir.
15 2000) ("A moving party may not require the nonmoving party to produce evidence
16 supporting its claim or defense simply by saying that the nonmoving party has no such
17 evidence.") (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 609 (11th Cir. 1991)
18 ("Even after Celotex it is never enough simply to state that the non-moving party cannot
19 meet its burden at trial.")).

20    A material fact is one that might affect the outcome of the case under governing
21 law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In addition, a
22 "genuine" issue means that a reasonable jury could find in favor of the non-moving party.
23 Id.; Anheuser-Busch, Inc. v. Natural Beverage Distrib., 69 F.3d 337, 345 (9th Cir. 1995).

24    On a motion for summary judgment, the Court views the evidence in the light most
25 favorable to the nonmovant. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir.
26 1995). The Court may not make credibility determinations or weigh conflicting evidence.
27 Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). In addition, the Court must draw
28

1  all reasonable inferences in favor of the nonmovant.  Gibson v. County of Washoe, 290
2  F.3d 1175, 1180 (9th Cir. 2002).

3　　　　If the moving party meets its burden with a properly supported motion for
4  summary judgment, then the burden shifts to the non-moving party to present specific
5  facts that show there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushia Elec.
6  Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  The nonmovant may not rest on
7  bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or
8  as otherwise provided by Rule 56, demonstrating a genuine issue for trial.  Fed.R.Civ.P.
9  56(e); Anderson, 477 U.S. at 248-49.

10　　　　The nonmovant has the burden of identifying with reasonable particularity the
11  evidence that it believes precludes summary judgment.  Id.; see Carmen v. San Francisco
12  Unified School District, 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if the evidence in
13  the record is later found to create a genuine issue of material fact, a district court may
14  grant summary judgment if the opposing party's papers do not include or conveniently
15  refer to that evidence).  A district court is not required to probe the record in search of a
16  genuine issue of triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).

17　　　　In addition, conclusory allegations, unsupported by factual material, are
18  insufficient to defeat summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.
19  1989).  The mere existence of a scintilla of evidence supporting the nonmovant's petition
20  is insufficient; there must be enough evidence from which a trier of fact could reasonably
21  find for the non-movant.  Anderson, 477 U.S. at 251-52 ("[T]he inquiry . . . is . . . whether
22  the evidence presents a sufficient disagreement to require submission to a jury or whether
23  it is so one-sided that one party must prevail as a matter of law.").  The nonmovant "must
24  do more than simply show that there is some metaphysical doubt as to the material facts."
25  Matsushita Elec., 475 U.S. at 586.

26  **III.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

27　　　　Plaintiff moves for summary judgment on the following: (1) that Defendants
28  breached Paragraph 4 of the Settlement Agreement and Release, (2) that Defendant

- 7 -

1  Brentlinger breached the Stock Purchase Agreement, and (3) that Paragraph 1 of the SAR
2  does not bar Plaintiff from enforcing the Arbitration Award and the SPA pursuant to §§
3  (d) and (e) of Paragraph 8 of the SAR.  (Dkt. #17, p.1; Dkt. #21, p.1).  Plaintiff also seeks
4  specific enforcement of the SPA.  (Dkt. #17, p.7).  It is undisputed that the CRL stock
5  registration lapsed in early 2007.  However, Defendants contend that summary judgment
6  is inappropriate because Plaintiff released its claims against Brentlinger under Paragraph
7  1 of the SAR, and there are issues of fact with respect to whether Defendant CRL used its
8  "best efforts" pursuant to Paragraph 4 of the SAR and whether the breach was material
9  (or whether CRL substantially performed its obligations under the SAR).  (Dkt. #19, pp.
10 1-2).  In addition, Defendant asks that the Court deny Plaintiff's request for specific
11 performance.  (Id., pp. 18-19).

      **A.**    **Release and Discharge, SAR ¶ 1**

13       It is undisputed that Brentlinger was obligated pursuant to the SPA to purchase
14 Dialog4's CRL stock upon Dialog4's written request between November 16, 2002 and
15 May 16, 2003.  It is also undisputed that Dialog4 made such a request on March 21, 2003.
16 Nevertheless, Defendants argue that Paragraph 1 of the SAR released Brentlinger from all
17 liability under the March 2003 demand letter because there was no material breach of the
18 SAR, and "because the SPA's six month window for Dialog4 to demand that Jay
19 Brentlinger purchase its CRL stock expired without action by Dialog4."  (Dkt. #19, p.10).

20       That latter statement ignores the fact that Dialog4 made a written request to
21 Brentlinger in March 2003 that he purchase the CRL stock, well within the applicable six
22 month window specified in the SPA.  Dialog4 thus took the requisite action under the
23 SPA; it is not asking that the Court extend the six month window, but simply to hold
24 Brentlinger liable for his failure to respond to Dialog4's timely request and comply with
25 the terms of the SPA in 2003.  As such, the Court will grant Plaintiff's request for partial
26 summary judgment that Defendant Brentlinger breached the Stock Purchase Agreement.

27       In addition, the release in Paragraph 1 of the SAR only takes effect "[u]pon . . .
28 registration of the [CRL stock] pursuant to Paragraph 4 of [the SAR]."  Paragraph 4

- 8 -

requires that CRL register the CRL stock and keep the registration statement effective for five years unless one of two specified events occur. Those events have not occurred, and it has not been five years since the parties entered into the SAR. Further, Paragraph 8(e) of the SAR specifically provides that Dialog4 may seek enforcement of the SPA in the event that Defendants default on their obligations under Paragraph 4. As such, the release in Paragraph 1 is not yet in effect, and does not bar Dialog4 from seeking to enforce the SPA. However, the pertinent inquiry is whether Defendants' failure to maintain effective registration of the CRL stock constitutes a material breach of Paragraph 4 of the SAR such that Plaintiff may specifically enforce the Arbitration Award and the SPA pursuant to §§ (d) and (e) of Paragraph 8 of the SAR

### B.  Breach of Contract

Dialog4 contends that Defendants breached Paragraph 4 of the SAR by failing to maintain registration of the CRL stock. "In an action for breach of contract, the plaintiff has the burden of proving the existence of a contract, its breach and the resulting damages." Biltmore Bank of Arizona v. First Nat'l Mortgage Sources, LLC, 2008 WL 564833, at *6 (D. Ariz. 2008) (citing, *inter alia*, Chartone, Inc. v. Bernini, 207 Ariz. 162, 171 (Ariz. App. 2004)). A material breach excuses the non-breaching party from performing under the contract; a non-material breach merely permits a claim for damages. Id. (citations omitted).

#### 1. Best Efforts

Defendants contend that "[t]he parties employed the phrase 'best efforts' [in Paragraph 4 of the SAR] rather than including a blanket requirement of uninterrupted registration because they understood that various factors beyond Defendants' control could result in temporary lapses in registration." (Dkt. #19, p.7). As such, Defendants argue that "the temporary lapse in registration in 2007 does not constitute a breach of the SAR because it did not demonstrate that CRL failed to use its best efforts to maintain the registration." (Id.).

1     "'The duty of best efforts has diligence as its essence and is more exacting than the usual contractual duty of good faith.'" Television Events & Marketing, Inc. v. Amcon Distr. Co., 484 F.Supp.2d 1124, 1132 (D. Haw. 2006) (quoting National Data Payment Sys, Inc. v. Meridian Bank, 212 F.3d 849, 854 (3rd Cir. 2000) (internal quotation marks omitted)). "Ultimately, the exact contours of the obligation to fulfill a 'best efforts' clause are unclear," and thus a dispute over the interpretation of such a clause is generally one for the fact-finder. Id. at 1133 (citing Maxim Integrated Productions., Inc. v. Analog Devices, Inc., 79 F.3d 1153, 1996 WL 117425, at *3 (9th Cir. 1996)). However, a breaching party "cannot avoid liability from a 'best efforts' clause simply because it would have not been profitable to continue to fulfill its obligation" under the contract. Id.

    Here, Defendants contend the "best efforts" clause reflects that "the parties anticipated that there would be periods of lapse in the registration of CRL stock over the ensuing five years," and also "acknowledge[s] that the Defendants cannot control how promptly the SEC processes its filings and, additionally, cannot control how the SEC would evaluate the Defendants' submissions. Additionally, the 'best efforts' language was inserted in acknowledgment that some documentation could not be prepared in sufficient time to keep the CRL stock constantly registered." (CSOF ¶ 11). However, that "temporary" lapse in registration lasted approximately 16 months, or approximately six quarters during which Defendants failed to file post-effective amendments to maintain the CRL stock registration. That admitted failure was not a result of the SEC's alleged lack of promptness.

    Notably, in his October 11, 2007 letter, Richardson stated that "the registration statement [wa]s currently not in effect" because "[p]reparing a new up-to-date registration statement [to keep it effective would] cost CRL between $15,000 and $60,000" and "take approximately 6 to 8 weeks." (Id.). Likewise, in discussing the "best efforts" clause, Defendant Brentlinger also referred to CRL's "financial difficulty" and stated that "the financial statements require significant time and resources to prepare." (Brentlinger Decl. ¶ 14). Thus, it appears that CRL ceased filing post-effective amendments to maintain the

- 10 -

1  CRL stock registration "simply because it would not have been profitable to continue to
2  fulfill its obligation." Television Events, 484 F.Supp.2d at 1133.
3        Regardless, Defendants submit no evidence other than Brentlinger's conclusory
4  affidavit testimony that the "best efforts" clause in the SAR contemplated periods of lapse
5  in the registration of the CRL stock.  There is no other evidence bearing on the
6  negotiations of the SAR or the established usage or special meaning intended for the term
7  "best efforts."  In addition, the only evidence that Defendants may have taken any action
8  throughout the entire lapse in registration is McMartin's statement in a May 21, 2007 that
9  the blackout period "will not be lifted until we get the post effective amendment
10 finished."  However, there is nothing to indicate whether the post-effective amendment
11 mentioned to in the May 21, 2007 email refers to the post-effective amendments
12 associated with the registration of the CRL stock or the release of CRL's quarterly
13 financial earnings information, which CRL regularly filed despite the 16 month lapse in
14 registration of the CRL stock. (Dkt. #21, p.5).  Nevertheless, neither the May 2007 email,
15 nor Brentlinger's affidavit, establishes that CRL took any action whatsoever during the
16 16-month lapse in registration to prepare and file post-effective amendments to re-register
17 and maintain registration of the CRL stock.  As such, even if there is a dispute over the
18 interpretation of the "best efforts" clause in the SAR, it is inapposite; here Defendants
19 made no effort at all.  And the Court agrees with Plaintiff that "[a] party cannot satisfy a
20 best efforts obligation by making no efforts at all."  (Dkt. #21, p.6).  Therefore, the Court
21 cannot hold that the evidence presented establishes a genuine issue of material fact or
22 reasonable inference that Defendants used their best efforts to maintain the registration of
23 the CRL stock.
24            2.  Materiality and Substantial Performance
25      Defendants contend that "Dialog4 has not made any showing that the alleged
26 breach was material or that it resulted in any discernible damage to Dialog4." (Dkt. #19,
27
28

- 11 -

p.8). Defendants also contend that CRL substantially performed its obligations under the SAR.[2]  (Id., pp. 9-10).

"Under Arizona law, a material breach occurs when (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions or (2) fails to do something required by the contract which is so important to the contract that the breach defeats the very purpose of the contract." Biltmore Bank, 2008 WL 564833, at *6 (citation omitted); see also Found. Dev. Corp. v. Loehmann's, Inc., 163 Ariz. 438, 445 (1990) ("[T]he breach must be 'material,' 'serious,' or 'substantial.'"). Conversely, "substantial performance means that one party has performed all that is required by a contract, except for slight deficiencies in performance that can easily be cured." Id. at *8. "To determine whether a party has substantially performed his obligations . . ., the court or jury should consider the nature of the promised performance, the purpose of the contract, and the extent to which any deficiencies in performance have defeated that purpose." Id. In addition, courts may consider whether the evidence establishes that the breaching party's behavior comports with standards of good faith and fair dealing. Loehmann's, 163 Ariz. at 446. Further, "[l]ike the determination of whether a breach is material, whether there has been substantial performance of a contract is a question of fact for the jury to resolve," Biltmore Bank, 2008 WL 564833, at *8, unless "the evidence adduced is susceptible of only one reasonable conclusion," 17A Am. Jur. 2d Contracts § 620 (2009).

Defendants ague that failure to maintain registration of the CRL stock was not material because despite registration Dialog4 could have sold over 100,000 of its shares

---

[2]As Plaintiff points out, "'[s]ubstantial performance is the antithesis of material breach; if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered, and further performance by the other party is excused.'" Id. at *8 (quoting 15 Williston on Contracts § 44:55 (4th ed. 1990) (footnotes omitted)). The only difference between the two doctrines is that "[t]he burden of proving substantial performance is on the party claiming it." Id. (citation omitted).

- 12 -

1 every 90 days, and yet it did not sell any of its CRL stock in 2006, and very little in 2007.
2 (Dkt. #19, p.8; CSOF ¶ 18).  In addition, when McMartin, CRL's Chief Financial Officer
3 and Executive Vice President, told Burkhardtsmaier there was a black out period and
4 Burkhardtsmaier was prohibited from selling his shares, Burkhardtsmaier responded: "No
5 problem.  The current share price is not attractive for any sales activities."  (CSOF, Ex.
6 D).

7 　　　　Despite Defendants' contentions to the contrary, McMartin and Burkhardtsmaier's
8 emails do not establish that Burkhardtsmaier was informed of the lapse in registration of
9 the CRL stock.   Those emails establish only that Burkhardtsmaier was informed of a
10 black out period in the summer of 2007, and that at that time he was not interested in
11 selling stock at the current share price; not that a continued lapse in registration was "no
12 problem."  In fact, Burkhardtsmaier inquired into the reason for the black out period and
13 what had to be done to terminate it, which indicates that he was not aware of any
14 continued lapse in registration.  Burkhardtsmaier's October 2007 email to Richardson and
15 inquiry into why he could not sell as many shares as he wanted at that time further
16 indicates that he was not aware of any lapse in the registration of the CRL stock.  That
17 email, in addition to Burkhardtsmaier's July 3, 2007 email to McMartin that his intention
18 was to sell off the majority of the CRL stock by the end of 2007, indicates at the very
19 least that Burkhardtsmaier did not think that any sort of extended lapse in registration was
20 "no problem," despite Defendants' assertion that Dialog4 could have sold approximately
21 100,000 shares every 90 days.

22 　　　　Regardless, the materiality inquiry concerns the provisions of the contract, not the
23 non-breaching party's response to the breach.  The relevant inquiry is simply whether the
24 requirements in Paragraph 4 of the SAR are a "substantial part of the contract or one or
25 more of its essential terms or conditions" or whether the requirement to maintain
26 registration of the CRL stock is "so important to the contract that the breach defeats the
27 very purpose of the contract."  Importantly, Defendants do not dispute that Paragraph 4 is
28 a material provision of the SAR.  Its materiality is evident – it is one of only two

1 provisions in the SAR that constitute consideration for Dialog4's promise to not enforce
2 the Arbitration Award and forgo any claims against Defendants; the other is installment
3 payments of $965,000 pursuant to Paragraph 3.  And clearly the purpose of registering the
4 CRL stock – to allow Dialog4 to sell all of its shares, not just 100,000, at any time when
5 the share price is acceptable – is frustrated when Defendants do not maintain registration.

6 Nevertheless, Defendants contend that the breach is not material because CRL has
7 substantially performed its obligations under the SAR: it has fulfilled its obligation under
8 Paragraph 3 to pay Dialog4 $965,000; it registered the CRL stock with the SEC pursuant
9 to Paragraph 4, maintained that registration for one year, and re-registered the CRL stock
10 in June 2008 after a lapse in registration (lasting approximately 15-16 months).  The
11 question is whether that lapse constitutes "deviat[ion] from the contract in only a trivial or
12 minor way."  Biltmore Bank, 2008 WL 564833, at *24-25.  Although it is conceptually
13 difficult to imagine that a 15-16 month lapse in registration of the CRL stock can be
14 trivial in light of the intended purpose of the registration pursuant to the SAR, triviality in
15 large part goes to the effect of the breach.  The Court must consider the extent to which
16 the lapse of registration defeated the purpose of the contract and whether such a lapse can
17 easily be cured.

18 Here, Defendants filed a post-effective amendment with the SEC on May 30,
19 2008. (CSOF ¶ 22).  As such, the stock is presently registered and freely tradeable. (Id. ¶
20 23).  In addition, regardless of whether Burkhardtsmaier knew whether Defendants had
21 breached their obligations under Paragraph 4 of the SAR in the summer of 2007,
22 Burkhardtsmaier's July 2007 email establishes that he was not interested in selling his
23 CRL shares at that time.  Burkhardtsmaier's October 2007 email, on the other hand, is the
24 first evidence that the lapse in registration may have prevented him from selling his CRL
25 shares; but the email does not indicate how many shares he intended to sell.  And in light
26 of Defendants' uncontested assertion that Burkhardtsmaier was able to sell approximately
27 100,000 shares every 90 days despite the lapse, it is unclear whether Burkhardtsmaier was
28 in fact prevented from selling any shares in October 2007.  Further, Plaintiff submits no

1 evidence that Burkhardtsmaier intended to or would have sold more than 100,000 shares
2 had the registration of the CRL stock been current.  Moreover, Defendants are now in
3 compliance with Paragraph 4 of the SAR and there is no evidence that the breach
4 prevented Dialog4 from selling any shares in the interim.  Accordingly, there are
5 sufficient issues of fact as to whether the lapse was inconsequential and minor, and thus
6 the Court cannot conclude at this time that Defendants' breach of Paragraph 4 of the SAR
7 was material.

8       **B.**     **Specific Performance**

9      Dialog4 requests "an order compelling Brentlinger to specifically perform his
10 obligations under the SPA to purchase the CRL stock at $1.10 per share." (Dkt. #17,
11 p.10).

12      Specific performance is "an equitable remedy which is extraordinary and
13 dependent upon the sound discretion of the court." Glad Tiding Church v. Hinkley, 71
14 Ariz. 306, 314 (1951).  In order to obtain specific performance, "[t]ypically, there are five
15 requirements: (1) there must be a contract; (2) the terms of that contract must be certain
16 and fair; (3) the party seeking specific performance must not have acted inequitably; (4)
17 specific enforcement must not inflict hardship on the other party or public that outweighs
18 the anticipated benefit to the party seeking specific performance; and (5) there must be
19 not adequate remedy at law." Power P.E.O., Inc. v. Employees Insurance of Wausau, 201
20 Ariz. 559, 563 (2002).

21      Dialog4 argues that specific performance is warranted because, among other
22 things, "[a] damages remedy would merely account for the difference between the value
23 of the CRL stock at $1.10 and the value of the CRL stock at its trading price on the date
24 of the trial." (Dkt. #21, p.11).  Dialog4 contends that such a remedy is inadequate
25 because "Dialog4 would still hold the CRL stock." (Id.).  But if the CRL stock remains
26 registered and thus freely tradeable, it appears that Dialog4 would be able to unload any
27 remaining stock on the date of the trial, receive payment for that stock, and recover any
28 damages resulting from Defendants breach of Paragraph 4 of the SAR.  Regardless,

- 15 -

1  because there are remaining issues of fact as to whether Defendants' breach of the SAR
2  was material, the Court cannot yet excuse performance by Dialog4 under the SAR, and
3  thus Dialog4 is not entitled to invoke Paragraph 8(e) of the SAR to specifically enforce
4  the terms of the SPA at this time.

5  **IV.    SUMMARY**

6        The evidence presented establishes that Defendants breached Paragraph 4 of the
7  SAR by failing to take any steps between early 2007 and May 2008 to keep the CRL
8  stock registered.  The evidence also establishes that Brentlinger breached the SPA in 2003
9  by failing to purchase the CRL stock pursuant to Dialog4's timely March 2003 request.  In
10 addition, as Defendants have not yet fulfilled their obligations under Paragraph 4 of the
11 SAR, the release and discharge in Paragraph 1 of the SAR has not yet become effective
12 and thus does not bar Dialog4 from seeking to enforce the ASPA and the SPA.  However,
13 in light of the totality of the circumstances, including Defendants' full performance under
14 Paragraph 3 of the SAR, their partial performance under Paragraph 4 of the SAR, and
15 their subsequent filings with the SEC to re-register the CRL stock to effect compliance
16 with Paragraph 4, in addition to the questions of fact concerning whether the lapse in
17 registration was inconsequential or minor, the Court cannot conclude at this time that
18 Defendants' breach of Paragraph 4 of the SAR was material.  As such, the Court also
19 cannot determine at this time whether Dialog4 is entitled to invoke Paragraph 8(e) of the
20 SAR to enforce the terms of the SPA against Brentlinger to obtain specific performance.

21       **Accordingly,**

22       **IT IS HEREBY ORDERED** granting in part and denying in part Plaintiff's
23 Motion for Partial Summary Judgment. (Dkt. #17).  Partial summary judgment is granted
24 to the extent that the Court holds: (1) Defendants breached Paragraph 4 of the SAR, (2)
25 Defendant Brentlinger breached the SPA, and (3) Paragraph 1 of the SAR does not bar
26 Plaintiff from enforcing the Arbitration Award and the SPA pursuant to §§ (d) and (e) of
27 Paragraph 8 of the SAR.  However, the Court denies partial summary judgment to the
28 extent that there are genuine issues of material fact with respect to whether Defendant

1 materially breached Paragraph 4 of the SAR and thus whether Plaintiff may seek specific
2 enforcement of Defendants' obligations under the Arbitration Award and SPA pursuant to
3 §§ (d) and (e) of Paragraph 8 of the SAR.

**IT IS FURTHER ORDERED** setting this matter for Status Hearing on April 29, 2009 at 1:30 p.m. before Judge Mary H. Murguia, at which time a Trial date will be set.

DATED this 31st day of March, 2009.

_____
Mary H. Murguia
United States District Judge